IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-575-GCM

| | |
|---|---|
| PETE J. PAPPAS )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SOLUTION START, CORP., )<br>)<br>)<br>)<br>Defendant. )<br>) | ORDER |

This matter is before the Court upon Defendant's Motion for Partial Summary Judgement pursuant to Rule 56(a) of the Federal Rules of Civil Procedure (Doc. No. 6). This motion has been fully briefed and is ripe for disposition.

## I.     FACTUAL BACKGROUND

Plaintiff Pete J. Pappas initiated this claim against his former employer Defendant SolutionStart, Corp. for unpaid overtime in violation of the Fair Labor Standards Act ("FLSA") and the North Carolina Wage and Hour Act ("NCWHA").

Defendant was founded in 2000 by its CEO, Demetrios Andritsogiannis, who at all times relevant to this case went by the name Jimmy Georgiou ("Georgiou"). Defendant is a business providing technology solutions, managed services, and customer support to its customers, most of whom are dental practices.

1

Plaintiff was employed by Defendant as a technician.  His duties included installing hardware systems and cables at client locations and occasionally supporting hardware and software products.  Beginning in the early days of its existence, Defendant paid all employees as salaried employees, and they received the same flat amount each pay period regardless of how many hours the employee worked.  Georgiou and Andy Vrantsis ("Vrantsis"), the company's Vice President of Operations and Finance, allegedly believed this was appropriate for skilled professionals in a computer related field.

Defendant uses Paychex, a third-party service provider, to process payroll and consult on HR matters.  Paychex assisted in the creation of the company's employee handbook and benefit plans.  Georgiou assumed Paychex would notify SolutionStart if its pay practices were incorrect.

In the summer of 2016, Plaintiff expressed his belief that he was misclassified by Defendant as an exempt employee under FLSA and that he should be earning overtime.[1]  Around the same time, Defendant was contacted by Paychex in connection with some upcoming changes in the law that might require Defendant to reclassify certain employees as non-exempt.

Defendant consulted with Paychex and sought legal advice on both the new wage laws and Plaintiff's question about his own classification.  After this consultation Defendant reclassified Pappas and one other employee as non-exempt.  Out of 25 employees, these were the only two employees who needed to be reclassified.  The re-classification was implemented the week of July 9-16, 2016.  Plaintiff was paid in accordance with the law from this date forward.

---

[1] The FLSA's overtime pay provisions are subject to several exemptions. *See* 29 U.S.C. § 213. Section 213(a)(1) exempts employees employed in a "bona fide executive, administrative, or professional capacity." *Id*.

Plaintiff asked to be paid for the overtime he had worked prior to his reclassification.  In November 2016, Defendant attempted to pay Plaintiff and the other reclassified employee an amount equal to the overtime they should have received for the previous two years.  There was no condition to their acceptance of this payment.

Even though Plaintiff was paid a salary, Defendant maintained accurate records of his working hours using a software program called ConnectWise.  Plaintiff entered his own hours into ConnectWise and certified that they were correct.  Plaintiff acknowledges that these records accurately reflected his time.  Using the ConnectWise records, Vrantsis created a spreadsheet showing how much money Plaintiff would have earned during the past two years if he had been paid overtime.  During the November meeting, Georgiou and Vrantsis showed Plaintiff the spreadsheet and explained the methodology behind it.  Plaintiff acknowledges the spreadsheet is accurate and its methodology was correct.  In that meeting, Georgiou and Vrantsis also presented Plaintiff with a payroll check in the gross amount of $10,350.17 and a Memorandum of Understanding explaining the payment and how it had been calculated.  Although there was no condition on Plaintiff's acceptance of the payment, Defendant hoped the Memorandum would effectively communicate that there was no reason for a dispute.  Plaintiff took the check with him, but never deposited it.  Plaintiff allegedly believed that the payment was "unfair" because it did not cover the entire length of his employment.

Plaintiff continued working for Defendant as a non-exempt employee until he voluntarily resigned effective June 16, 2017.  He filed this lawsuit on August 4, 2017.

## II. DISCUSSION

### A. Standard of Review

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. *Id.*

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (internal citations omitted). Once this initial burden is met, the burden shifts to the nonmoving party, which "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id.* at 324. Instead, "the non-moving party must present sufficient evidence such that 'reasonable jurors could find by a preponderance of the evidence' for the non-movant." *Sylvia Dev. Corp. v. Calvert Cnty., Md.,* 48 F.3d 810, 818 (4th Cir. 1995) (citing *Anderson,* 477 U.S. at 252 (1986)).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita v. Zenith*

4

*Radio Corp.*, 475 U.S. 574, 587 (1986)).  In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.

**B. Plaintiff Cannot Establish a Willful Violation of FLSA**

The FLSA contains a two-year statute of limitations on actions to enforce its provisions but allows that "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a).  "[A]n action under the FLSA is considered 'commenced' when the complaint is filed[.]" *Hantz v. Prospect Mortgage, LLC*, 11 F. Supp. 3d 612, 617 (E.D. Va. 2014) (citing *LaFleur v. Dollar Tree Stores, Inc.*, No. 2:12–cv–00363, 2012 WL 4739534, at *1 (E.D. Va. Oct. 2, 2012).

Plaintiff bears the burden of proving a willful FLSA violation.  *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 358 (4th Cir. 2011).  "Only those employers who 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]' have willfully violated the statute." *Id*. at 358 (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).  Negligence is insufficient to show willfulness.  *Id*.  Similarly, the Supreme Court noted in *McLaughlin* that an employer's violation of the FLSA is not willful if it is the result of a "completely good-faith but incorrect assumption that a pay plan complied with the FLSA in all respects." *McLaughlin*, 486 U.S. at 135.  Although willfulness is ultimately a question of fact, Plaintiff must present sufficient evidence of willfulness to survive summary judgment.  *Id*.

Here, Plaintiff cannot produce sufficient evidence of willfulness.  On the contrary, the evidence shows that Defendant genuinely believed its employees were bona fide exempt

5

computer professionals under Section 213(a)(1).  *See* 29 U.S.C. § 213 (exempting "any employee employed in a bona fide executive, administrative, or professional capacity" from FLSA's minimum wage and maximum hour requirements); *see also* 29 C.F.R. § 541.400(a) (exempting "[c]omputer systems analysts, computer programmers, software engineers or other similarly skilled workers in the computer field" as "professionals").  Even after conducting a thorough review, the company only needed to reclassify two employees out of about 25 as non-exempt.  Furthermore, Defendant relied on Paychex to manage Defendant's payroll.  In *Prusin v. Canton's Pearls*, *LLC,* the District of Maryland refused to find a reckless or willful violation of FLSA due to a similar reliance on a third-party processor.  *See Prusin v. Canton's Pearls, LLC*, 2017 U.S. Dist. LEXIS 160810, at *7 (D. Md., September 29, 2017) ("Defendants may have acted negligently in relying on a third-party payroll processor… but their conduct was not willful—i.e., there is no evidence that they knew or showed reckless disregard for whether their conduct was prohibited by the FLSA").  Plaintiff has produced no evidence rebutting Defendant's contention that it genuinely believed the employees were exempted under 29 U.S.C. § 213.

As shown, the evidence is insufficient to create a genuine issue of fact regarding Defendant's willfulness.  Accordingly, Plaintiff's recovery of unpaid overtime under the FLSA is limited to two years preceding the filing of suit on August 4, 2017.

### C. The Overtime Provision of the North Carolina Wage and Hour Act Does Not Apply.

The North Carolina Wage and Hour Act expressly provides that its overtime requirements do not apply to "[a]ny person employed in an enterprise engaged in commerce or in

6

the production of goods for commerce as defined in the Fair Labor Standards Act." N.C. Gen. Stat. § 95-25.14(a)(1). In his brief in opposition, Plaintiff concedes that his claim under the North Carolina Wage and Hour Act is preempted. Accordingly, this claim is dismissed.

**D. Plaintiff's Unpaid Overtime Should be Paid at Half-Time Per Hour Rather Than Time-and-a-Half.**

In this case, damages must be calculated according to the "fluctuating workweek" method of overtime calculation found in 29 C.F.R. § 778.114(a), which provides as follows:

> an employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay . . .

29 C.F.R. § 778.114(a).

The Fourth Circuit endorsed this method of calculating damages in *Desmond,* finding it appropriate "in mistaken exemption classification cases, so long as the employer and employee had a mutual understanding that the fixed weekly salary was compensation for all hours worked each workweek and the salary provided compensation at a rate not less than the minimum wage for every hour worked." *Desmond*, 630 F.3d at 354. *Desmond* affirmed the district court's finding that the fluctuating workweek method is not expressly authorized by 29 C.F.R. § 778.114(a) itself, but instead results from the decision of the Supreme Court in the case of

7

*Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572 (1942). *See id.* at 356-57 (citing *Desmond v. PNGI Charles Town Gaming*, LLC, 661 F. Supp. 2d 573, 584 (N.D. W.V. 2009). *Desmond* also observed that this method of calculating damages aligned with the Department of Labor's approval of the 50% overtime premium in a mistaken classification case. *See id.* at 356. (citing *Retroactive Payment of Overtime and the Fluctuating Workweek Method of Payment*, Wage and Hour Opinion Letter, FLSA 2009-3 (Dep't of Labor Jan. 14, 2009)).

Here, it is undisputed that Plaintiff's schedule varied from week to week and that his salary was compensation for all hours he worked per week, whether greater or less than 40. It is also undisputed that Plaintiff understood his salary as compensation for all hours worked. Plaintiff's only argument against Defendant's motion for summary judgement is that the issue of calculation of damages is not ripe for judgment. While the exact number of overtime hours is not before the Court on this motion, there is no reason that the *method* of calculating overtime cannot be determined as a matter of law. *See Pine Ridge Coal Co. v. Local 8377, UMW,* 187 F.3d 415, 421 (4th Cir. 1999) (affirming the district court's decision to calculate damages based off the number of days the defendant operated a mine in a year instead of the total number of days in a year). Therefore, the court finds that any unpaid overtime at issue in this case should be paid in accordance with the fluctuating workweek method.

IT IS THEREFORE ORDERED that Defendant's Motion for Partial Summary Judgement is HEREBY Granted.

Signed: July 26, 2018

Graham C. Mullen
United States District Judge